IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| AMY CORNWELL and DARREN CORNWELL, Plaintiffs, vs. STATE FARM MUTUAL AUTO-MOBILE INSURANCE COMPANY, Defendant. | No. 4:03-cv-40650 ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court on Defendant's Motion for Summary Judgment (Clerk's No. 9). Plaintiffs resist the requested action. Attorney for the Plaintiffs is Charles Gribble; attorney for the Defendant is Henry Harmon. Neither party has requested a hearing on the motion, and the Court finds none is necessary. Accordingly, the Court considers the motion fully submitted and ready for ruling.

## PROCEDURAL HISTORY

The Plaintiffs, Amy Cornwell ("Cornwell") and Darren Cornwell (collectively, "the Cornwells"), commenced this action against Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), in the Iowa District Court for Polk County. The case was then removed by Defendant to this Court on November 18, 2003. Jurisdiction is appropriate pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.

The lawsuit consists of two claims, breach of insurance contract (Count I) and bad faith (or breach of duty of good faith) (Count II), arising out of State Farm's

alleged failure to fulfill its contractual duties in paying underinsured motorist benefits to Plaintiffs for injuries from an accident Amy Cornwell was involved in while on duty as a police officer.  Defendant has moved for summary judgment on both counts.

## BACKGROUND FACTS

### A.    The Parties

Plaintiff Amy Cornwell was at all relevant times an individual residing in Urbandale, Iowa.  She was employed as a police officer by the Des Moines Police Department ("DMPD") and was acting within the course and scope of her employment at the time of the accident here in issue.  Plaintiff Darren Cornwell is the legal spouse of Amy Cornwell and is also an Iowa resident.  State Farm is an insurance company incorporated in Illinois with its principal place of business in Illinois.  The Plaintiffs and State Farm were parties to an automobile insurance policy, which included the underinsured motorist provision at issue.

### B.    The Accident

On March 21, 2001, while in the course of her duties as a DMPD police officer, Cornwell was a passenger in a patrol car driven by fellow DMPD police officer, Officer Jason Bennett.[1]  At roll call that evening, the officers were advised to be on the lookout for burglary suspects in a stolen vehicle.  During Cornwell's shift, Officer Tim Morgan spotted the stolen vehicle and notified dispatch he was in pursuit

_____

[1] Officer Bennett is now deceased.

2

of the burglary suspects.  Officers Bennett and Cornwell were nearby and activated their lights and sirens to assist Officer Morgan in the pursuit of the suspects.

During the pursuit, Officers Bennett and Cornwell reached a speed of fifty miles per hour ("mph") in a residential area with a posted speed limit of twenty-five or thirty mph.[2]  While in the course of the pursuit, Officers Bennett and Cornwell were traveling parallel to the suspect vehicle and other pursuing officers on an adjacent street when they were advised the suspect vehicle had turned and was now headed toward them.  Officer Cornwell advised Officer Bennett to angle the patrol vehicle in such a manner that the front of the vehicle was approximately three feet from the curb and the rear of the vehicle was approximately two feet from the opposite curb.  This maneuver essentially blocked the street, though the suspect vehicle had room to drive over the curb and around the patrol car.

According to Cornwell, as the suspect vehicle approached, the driver of the suspect vehicle drove over the curb as if to go around the patrol car and then turned the wheel and aimed directly at the patrol vehicle.  The two vehicles impacted, and the suspect vehicle flipped over.  The driver of the vehicle fled on foot and was pursued by Officers Bennett and Morgan.  Meanwhile, Cornwell drew her weapon on the two remaining passengers inside the suspect vehicle and was able to apprehend these suspects at the site of the accident.

---

[2] Cornwell disputes the characterization of the pursuit as a "high speed chase". However, the Court does not find that specific fact material to the present consideration.

**C.**     **The Injury and Settlements**

As a result of the pursuit and ensuing accident, Cornwell's knee was injured, most likely as a result of twisting the knee.[3]  Cornwell claims she experienced pain in her knee immediately after the incident but did not seek medical attention until three days later.  She continued to experience pain in the knee even after her doctor, Dr. Davick, prescribed an anti-inflammatory.  Cornwell subsequently underwent arthroscopic surgery on May 1, 2001, during which time her doctor discovered a hole in the cartilage of her knee.  While Cornwell initially did not remember a specific injury to her knee, she did note swelling and pain after the accident.  Dr. Davick believed that Cornwell braced herself during the impact of the March 21 accident, causing her cartilage to tear away from the bone.

Following her surgery, Cornwell underwent physical therapy and was assigned light duty.  Her doctor later advised her that she would not be able to run as a result

---

[3] Cornwell has a significant history of injuries to her right knee prior to the March 21 accident.  Most of these prior injuries were incurred while playing competitive collegiate soccer.  Cornwell had an open repair of an anterior cruciate ligament ("ACL") tear and lateral meniscus tear in July 1992.  She has had three subsequent surgeries with revision of the ACL and partial meniscectomy in 1994, 1995, and 1997.

However, in the interval between her arthroscopic procedure in 1997 and the 2001 injury, Cornwell disclaims any pain in her knee.  She was able to fully perform all her duties as a police officer, including running, squatting, climbing, twisting, and crawling without difficulty.  Thus, a fact issue is generated as to the amount of physical injury sustained as a result of this incident.

of the injury and consequently could not return to work as a police officer.  As a result, Cornwell applied for disability benefits.

Due to her injuries and inability to return to work, Cornwell was compensated pursuant to the provisions of the Des Moines Municipal Fire and Police Retirement System, from which she continues to draw a pension.  In addition, the Cornwells effected a settlement of claims with the Progressive Insurance Company, which purportedly insured the fleeing suspect, in the amount of $100,000.00, i.e., the policy limit.  As a result of a subrogation claim by the Des Moines Municipal Fire and Police Retirement System, Amy Cornwell ultimately received $5,297.77 of the initial settlement, and David Cornwell received $20,000 of the initial settlement amount for his loss of consortium claim.  Plaintiffs insists the $100,000.00 tendered by the driver's insurer is insufficient to compensate the Cornwells for their damages, even considering the disability benefits Amy Cornwell receives.

Due to the resulting injuries, Cornwell is unable to return to her former job as a police officer with the DMPD.  She has, however, returned to the work force, being most recently employed as an office assistant at Central Iowa Orthopaedics, where she works 40 hours per week.

**D.    The Underinsured Motorist Provision of the State Farm Policy**

On March 21, 2001, Cornwell was a named insured under a policy of motor vehicle insurance issued by State Farm.  That policy, Policy No. 5 0712-E29-15C, provided, *inter alia*, underinsured motorist coverage ("UIM") in the limits of

$100,000.00 for each person with an aggregate limit of $300,000.00 per accident.

Section III of the policy of insurance is entitled "Uninsured Motor Vehicle and Under-insured Motor Vehicle Coverages."  This provision provides the following:

> We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be caused by the accident arising out of the operation, maintenance or use of an *underinsured motor vehicle*.

By definition in the policy, underinsured motorist coverage is denominated as Coverages W and W4.  Pursuant to the policy of insurance,

> Two questions must be decided by agreement between the *insured* and us:
>
> 1.  Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle* or *underinsured motor vehicle*; and
>
> 2.  If so, in what amount?

The policy then proceeds to outline arbitration procedures in case the parties cannot agree, though in the present case Plaintiffs have elected not to pursue arbitration.

In connection with the Limits of Liability, the policy of insurance further states regarding Coverages W and W4 that

> 2.  Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured* under any workers' compensation, disability benefits, or similar law.
>
> 3.  The most we will pay will be the lesser of:

6

a. the amount by which the ***insured's*** damages for ***bodily injury*** exceed the amount paid to the ***insured*** by or for any ***person*** or organization who is or may be held legally liable for the ***bodily injury*** or;

b. the limits of liability of this coverage.

The policy of insurance further sets forth circumstances under which there is no coverage as follows relating to Coverages W and W4:

THERE IS NO COVERAGE
* * *
3. TO THE EXTENT IT BENEFITS:
a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;
b. A SELF INSURER UNDER ANY WORKERS' COMPEN-SATION OR DISABILITY BENEFITS OR SIMILAR LAW;
c. ANY GOVERNMENTAL BODY OR AGENCY.

Based on these offset provisions of the policy and other legal considerations, State Farm denied UIM benefits to Cornwell under the terms of the policy. State Farm cited the Fireman's Rule and the previous benefits and settlements received by the Cornwells as reasons for the denial of coverage. The Cornwells subsequently brought suit seeking UIM coverage from State Farm pursuant to the policy of insurance and further alleging bad faith on the part of State Farm in denying their initial claim for the benefits.

## ANALYSIS

State Farm filed a motion for summary judgment on essentially the same grounds its cites as the reasons for its denial of underinsured motorist benefits to

7

Plaintiffs.  State Farm claims the Fireman's Rule precludes payment under the under-insured motorist coverage provisions of its policy.  In addition, State Farm argues the offset provisions of its policy preclude payment.  State Farm further denies any bad faith.  The Cornwells resist Defendant's motion.

## A.    Standard for Summary Judgment

"[C]laims lacking merit may be dealt with through summary judgment under Rule 56."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be rendered

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

To avoid summary judgment, the nonmoving party must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial.  See Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Wilson v. Southwestern Bell Tel. Co., 55 F.3d 399, 405 (8th Cir. 1995).  The nonmoving party must go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, and admissions on file, designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324.  The Court must view all of the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts.  Matsushita

8

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citations omitted); Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1280 (8th Cir. 1996); Marts v. Xerox, Inc., 77 F.3d 1109, 1112 (8th Cir. 1996).  While the quantum of proof that must be produced to avoid summary judgment is not precisely measurable, it must be enough evidence for a reasonable jury to return a verdict in favor of the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,  257 (1986).

**B.     Underinsured Motorist Coverage**

Under the terms of the policy, an insured is entitled to collect underinsured motorist benefits for "damages for ***bodily injury*** an ***insured*** is legally entitled to collect from the owner or driver of an ***underinsured motor vehicle***."  The Iowa Supreme Court has found that an essential element of the insured's claim is that the insured must be legally entitled to recover damages from the underinsured motorist. Wetherbee v. Economy Fire & Cas. Co., 508 N.W.2d 657, 660 (Iowa 1993).  The court further found "the only reasonable interpretation of 'legally entitled to recover damages' is that it means the insured must have suffered damages caused by the fault of the underinsured motorist to be entitled to receive those damages."  Id.

The Iowa Supreme Court has further stated it "will not interpret the language 'legally entitled to recover' literally."  Waits v. United Fire & Cas. Co., 572 N.W.2d 565, 574 (Iowa 1997).  Rather, the court has chosen an interpretation which advances the legislature's intent of compensating the injured party as if the underinsured motor-ist were adequately insured.  Id. at 573-74.  To that end, the court stated that "this

language is simply meant to limit UIM benefits to what the injured person would have been entitled to recover from the underinsured motorist *if* the underinsured motorist had been adequately insured and *if* a tort suit against the underinsured motorist had been pursued." Id. at 574.

Thus, in order to determine whether the insured is entitled to collect the underinsured proceeds, it is necessary to examine whether the insured would have been entitled to recover from the underinsured motorist. Id. When the injury at issue involves a police officer acting within the scope of her authority, this analysis necessarily includes consideration of the Fireman's Rule.

**C.      The Fireman's Rule**

Iowa has adopted the "Fireman's Rule", which states that neither a fireman nor a policeman can recover for injuries caused by the very wrong that initially required their presence. Pottebaum v. Hinds, 347 N.W.2d 642, 643 (Iowa 1984). Accordingly, "[t]he relevant inquiry is whether the negligently created risk which resulted in the firefighter's or police officer's injury was the very reason for his or her presence on the scene in a professional capacity. If the answer is yes, then recovery is barred; if no, recovery may be had." Id. at 646.

In Pottebaum, the Iowa Supreme Court analyzed the various public policy reasons behind the rule and concluded that despite the "widespread existence of liability insurance, we believe these risks are more effectively and fairly spread by passing them on the public through the governmental entities that employ firefighters

and policemen." Id. at 645-46; see also Chapman v. Craig, 431 N.W.2d 770, 771

(Iowa 1988) (finding "no merit in [the] assertion that officer's losses would be more

fairly compensated through liability insurance" as "'the risks are more fairly spread by

passing them on to the public through the government entities who employ firefighters

and police officers'" (quoting Pottebaum, 347 N.W.2d at 645-46)).  Subsequently, in

Gail v. Clark, the Iowa Supreme Court further explained the policy considerations

behind the rule as follows:

> We sought to avoid any detrimental effect to public safety that might
> result from a citizen's unwillingness to call upon police or firefighters
> because of a potential liability resulting from a condition the citizen may
> have negligently created.  Moreover, we recognize that a citizen may
> have a legal duty in some instances to summon police or firefighters.
> Imposing liability upon a citizen in discharging that duty seemed to us
> inconsistent and unfair.

Gail v. Clark, 410 N.W.2d 662, 666 (Iowa 1987) (citing Pottebaum, 347 N.W.2d at

645); see also Pottebaum, 347 N.W.2d at 645 ("Citizens should be encouraged and

not in any way discouraged from relying on those public employees who have been

specially trained and paid to act with these hazards.").

There is, however, an important exception or limitation to the Fireman's Rule.

Pottebaum, 347 N.W.2d at 646.  Under this exception, a police officer is not barred

from recovery if the individual responsible for police presence engaged in subsequent

intentional conduct once the officer was on the scene.  Id. (citing Lipson v. Superior

Court, 644 P.2d 822 (Cal. 1982)); see also Iowa Code § 411.22 (permitting members

of the retirement system to bring an action against a third party for lost earnings and

earnings capacity due to injury or death).  In addition, a police officer is allowed to recover if the incident which caused the injury is unrelated to the reason the officer was at the scene of the accident.  <u>See</u> <u>Rennenger v. Pacesetter Co.</u>, 558 N.W.2d 419, 422 (Iowa 1997) (allowing firefighter to seek recovery from company remodeling building when he was injured while responding to a fire when he fell from an unguarded landing because while the fire was the reason for the firefighter's presence, it was the negligent acts of the builder that resulted in the firefighter's injury); <u>Paul v. Luigi's, Inc.</u>, 557 N.W.2d 895, 896 (Iowa 1997) (finding premises liability claim was not barred when police officer investigating a suspicious vehicle behind defendant's business fell into an unguarded window well and injured his ankle as the negligently created risk which resulted in the officer's injury was not the reason for his presence at the defendant's location); <u>Gail</u>, 410 N.W.2d at 666-67 (allowing dramshop action against convenience store after officer injured in high speed collision with intoxicated driver); <u>Pottebaum</u>, 347 N.W.2d at 646 (citing <u>Steelman v. Lind</u>, 634 P.2d 666, 666-67 (Nev. 1981) (allowing recovery from truck driver that struck police officer that had been summoned to assist a motorist on a roadway but not from the stranded motorist as the firefighter rule bars recovery only against the one whose negligence created the need for the officer's presence), and <u>Berko v. Freda</u>, 459 A.2d 663, 668 (N.J. 1983) (allowing police officer to seek recovery from car thieves but not from car owner that negligently left keys in the vehicle)).

12

As previously noted, in order to determine whether the insured is entitled to collect the underinsured proceeds, it is necessary to examine whether the insured would have been entitled to recover from the underinsured motorist if a tort suit against the underinsured motorist had been pursued and the motorist had sufficient insurance coverage.  Waits, 572 N.W.2d at 574.  In this case, a central issue is whether the Fireman's Rule would have prevented recovery of damages if such a tort suit had been pursued.  Pottebaum, 347 N.W.2d at 646.  Under this Rule, the Court must determine whether the negligently created risk which resulted in Cornwell's injury was the very reason for her presence on the scene in her professional capacity.  Id.

While Iowa law has not expressly dealt with the situation of a high speed pur-suit which results in injury to a police officer participating in the pursuit who then attempts to recover underinsured motorist benefits pursuant to the officer's own policy, State Farm asserts the Fireman's Rule would preclude recovery.  State Farm points to the case of Gail v. Clark, in which the court allowed an officer injured in a high speed collision with an intoxicated driver to pursue a dramshop action against the convenience stores that sold the alcohol to the driver.  Gail, 410 N.W.2d at 666-67. The officer sued both the driver and the convenience stores, and when the driver settled prior to trial, the court allowed the action to proceed against the stores by con-cluding that the dramshop violation was not the reason for the officer's presence on the scene.  Id.  In so finding, the Iowa Supreme Court adopted the district court's

13

ruling that "the main act that created the need for [the officer's] presence was the high speed chase and not the indirect dramshop violation." Id.

Based on the Gail decision, State Farm contends the Iowa Supreme Court implicitly recognized that when an officer is called to a high speed chase and is subsequently injured in that chase, any claims against the driver are barred by the Fireman's Rule. On the other hand, the Cornwells point out that the issue of whether the officer was barred from recovering from the intoxicated driver was never actually addressed because the driver settled prior to trial. In any event, the Cornwells contend that the injury in this case differs from that in Gail in that the suspect driver in this case intentionally ran into Cornwell's police vehicle.

While Iowa courts have not dealt with this situation, at least one other jurisdiction has discussed the Fireman's Rule in relation to a high speed chase. Maryland's Fireman's Rule, very similar to Iowa's rule, states that "[a] fireman or police officer may not recover if injured by the negligently created risk that was the very same reason for his presence on the scene in his occupational capacity."[4] State Farm Mut. Ins. Co. v. Hill, 775 A.2d 476, 482 (Md. Ct. Spec. App. 2001) (quotations and citations omitted). In that case, police officers were involved in a pursuit of a suspect in a stolen vehicle when they attempted to execute a "rolling roadblock", a maneuver in

---

[4] In comparison, Iowa's rule states that "[t]he relevant inquiry is whether the negligently created risk which resulted in the fireman's or policeman's injury was the very reason for his presence on the scene in his professional capacity." Pottebaum, 347 N.W.2d at 646.

which the officers would attempt to box in the suspect vehicle between the patrol vehicles.  Id. at 477-78.  The suspect in the stolen vehicle, who was uninsured, struck both patrol vehicles, injuring both officers.  Id. at 478-79.

The officers received workers' compensation benefits but were denied the uninsured motorist benefits from their personal insurance policies as the insurance carriers, State Farm and Nationwide, denied liability based on the Fireman's Rule.  Id. at 479.  The officers subsequently brought suit against the fleeing felon and their insurance companies.  Id.  Like State Farm's arguments in this case, the insurance companies contended that if the fleeing felon could not be held liable under the Fireman's Rule, then neither could the insurers.  Id. at 479-80.

In analyzing this argument, the Maryland court first lists a multitude of jurisdictions holding that the Fireman's Rule "does not protect a defendant who intentionally causes injury to a public safety employee."  Id. at 484-85 (citing cases from multiple jurisdictions).  The court adopted this view as "'the public policy underlying the 'fireman's rule' simply does not extend to intentional abuse directed specifically at a police officer."  Id. at 485-86 (quoting Berko, 459 A.2d at 667-68).  As a result, the court resolved that the driver of the stolen vehicle *and the insurance companies* could be sued and the Fireman's Rule did not preclude their liability.  Id.  The Cornwells ask the Court to likewise adopt this stance and find the Fireman's Rule does not prevent liability for the underinsured motorist benefits under the Cornwells' policy with State Farm.

15

In the present case, Cornwell was a police officer assisting in a high speed pursuit of a criminal suspect. The insured was subsequently injured by a collision of her police vehicle with the suspect vehicle. State Farm argues that under these circumstances, Cornwell is not legally entitled to recover damages from the driver of the suspect vehicle due to the Fireman's Rule barring such claims. Consequently, State Farm asserts Cornwell is not entitled to the underinsured motorist benefits under her personal policy of automobile insurance.

To the contrary, the Cornwells contend the suspect driver in the present case intentionally ran into the police vehicle, injuring Officer Cornwell. They contend these actions fall outside the purview of the "Fireman's Rule". Cornwell suffered serious injury to her knee as a result of the accident and is no longer able to perform her duties as a police officer. Cornwell reached a settlement with the suspect driver's insurer under the underinsured motorist provision of his automobile policy, and the Cornwells contend they should likewise be able to receive benefits from their own policy with State Farm.

The Iowa Supreme Court has repeatedly stated that the scope of the Fireman's Rule is limited or narrow. See Rennenger, 558 N.W.2d at 421; Paul, 557 N.W.2d at 897; Chapman v. Craig, 431 N.W.2d 770, 771 (Iowa 1988); Pottebaum, 347 N.W.2d at 645. Moreover, the policy behind the rule is to not discourage citizens from calling for police assistance out of fear of tort liability. See Gail, 410 N.W.2d at 666. As noted by another court under similar circumstances, "[n]o fundamental unfairness

16

results from allowing an officer to sue a criminal.  The crook does not summon the police for help."  <u>Hill</u>, 775 A.2d at 486.  In addition, the Iowa Supreme Court, in first adopting the Fireman's Rule, cited a case in which the court allowed an officer to sue a car thief that negligently or intentionally injured the officer during apprehension as an exception to the Rule.  <u>See</u> <u>Pottebaum</u>, 347 N.W.2d at 646 (citing <u>Berko</u>, 459 A.2d at 668).

A fleeing criminal suspect has his own reasons to avoid seeking the aid of the police, and it is difficult to discern a valid public policy for extending the protection of the Fireman's Rule to such an offender.  An appropriately strict interpretation of the Fireman's Rule, with due regard for the policy considerations behind the Rule, promotes a finding that the Fireman's Rule does not preclude liability under the circumstances of the present case as the Rule was meant to be narrowly tailored and limited, and the suspect driver was not the intended beneficiary of the rule.  However, this Court need not assume the task of defining the scope of Iowa's application of the Fireman's Rule.  In the present case, there are clearly genuine issues of material fact that control this issue:  Did the suspect driver intentionally crash into Cornwell's patrol vehicle, thereby injuring Cornwell?  Was the suspect's final act of driving into the patrol vehicle something other than an extension of the police chase?

The circumstances of the accident in this case offer an even more compelling argument than those in <u>Hill</u> for inapplicability of the Fireman's Rule.  In <u>Hill</u>, it was the "rolling roadblock" maneuver employed by the officers that initiated the contact

17

that resulted in the accident and injuries.  In this case, however, the maneuver employed by Officers Bennett and Cornwell was intended to dissuade the suspect driver from continuing his flight or to delay his escape long enough to be overcome by pursuing officers.  The contact was initiated by an act of the suspect, thereby giving rise to a greater probability that a trier of fact could find such conduct was intentional and outside the purview of the Fireman's Rule.  In other words, while the act of stealing the vehicle and engaging the police in a high speed pursuit was the initial reason for Cornwell's presence, it was the later and independent actions of the suspect driver that resulted in the accident and caused Cornwell's injury.  For these reasons, State Farm's motion for summary judgment on the basis of the Fireman's Rule must be denied.

**D.     Offset Provisions**

The Iowa Code requires uninsured/underinsured insurance coverage be provided.  That statute provides the following:

> No automobile liability or motor vehicle liability insurance policy insuring against liability for bodily injury or death arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in such policy or supplemental thereto, for the protection of persons insured under such policy who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or a hit-and-run motor vehicle or an underinsured motor vehicle because of bodily injury, sickness, or disease, including death resulting therefrom, caused by accident and arising out of the ownership, maintenance, or use of such uninsured or underinsured motor vehicle . . .

18

Iowa Code § 516A.1.  The uninsured/underinsured motorist statute further provides that "[s]uch forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits." Iowa Code § 516A.2.  In other words, this section "expressly allows such limitations which are designed to avoid duplication of insurance and other benefits."  Tri-State Ins. Co. of Minn. v. De Gooyer, 379 N.W.2d 16, 19 (Iowa 1985) (quoting McClure v. Employers Mut. Cas. Co., 238 N.W.2d 321, 326 (Iowa 1976), and citing American States Ins. Co. v. Tollari, 362 N.W.2d 519, 522 (Iowa 1985)).

State Farm asserts that certain provisions of its policy (quoted above in the background section) sought to limit duplication of benefits related to underinsured motorist coverage.  Such offset provisions in the underinsured coverage contained in such policies has been upheld in Iowa.  See Matthess v. State Farm Mut. Auto. Ins. Co., 548 N.W.2d 562, 564-65 (Iowa 1996) (finding an offset clause that allowed for the reduction of underinsured benefits by the amount of workers' compensation was enforceable and not contrary to Iowa Code § 516A.2 in that it sought to prevent the duplication of benefits); Jackson v. Farm Bureau Mut. Ins. Co., 528 N.W.2d 516, 517 (Iowa 1995) (finding that an offset policy that provided for the reduction of underinsured benefits by disability benefits was valid under Iowa Code § 516A.2); see also Gentry v. Wise, 537 N.W.2d 732, 735 (Iowa 1995); Leuchtenmacher v. Farm Bureau Mut. Ins. Co., 461 N.W.2d 291, 295 (Iowa 1990).

State Farm suggests that any further recovery by Cornwell under her under-insured motorist policy will violate the policy's offset provisions.  Specifically, State Farm contends the $100,000.00 settlement from Progressive coupled with the amounts received and to be received from "Workers' Compensation, disability benefits or similar law" for her injury amount to or exceed full and fair compensation for any and all damages claimed by Plaintiff.  Consequently, State Farm asserts further payment is not available under Cornwell's policy.  Further, State Farm argues that public policy will not be undermined, but rather preserved as the duplication of benefits will be prevented.

Cornwell counters by simply stating that whether Plaintiffs have been fully and fairly compensated for Cornwell's injury is a question for the jury.  While the Cornwells acknowledge that Amy Cornwell receives retirement/disability benefits from the Municipal Fire and Police Retirement System and received a settlement from Progressive (of which they received less than the amount propounded by Defendant after the Municipal Fire and Police Retirement System's subrogation claim was settled), they assert that this is insufficient to compensate them for Cornwell's injury.  At the very least, the Cornwells assert that this is a question of fact for the jury to determine whether these payments compensate the Cornwells for the damages suffered.

While the offset provisions in the insurance policy are legal and enforceable, Plaintiffs are correct in asserting that whether they have been fully and fairly

compensated is a question of fact.  It may be that a jury concludes Plaintiffs are entitled to damages, but further finds they have been fully compensated through the payments received (and continued to be received) from the Municipal Fire and Police Retirement System and from the Progressive settlement.  Therefore, the Court finds the offset provisions of the insurance policy do not provide sufficient basis to dismiss Plaintiffs' claims at this state of the proceedings.

**E.     Loss of Consortium Standards**

The Iowa Code provides injured parties with a loss of consortium claim based upon the value of services and support lost due to the wrongful or negligent injury of a spouse.  <u>See</u> Iowa Code 613.15.  There is, however, the widely accepted view by state courts, <u>see</u> <u>Archer v. Road Runner Trucking, Inc.</u>, 930 P.2d 1155, 1159-60 (N.M. 1996) (reviewing other states that have addressed the issue), that a loss of consortium claim is precluded where the injured spouse's claim is barred by an exclusive remedy such as that provided by the Workers' Compensation Act.  <u>See, e.g.</u>, <u>Johnson v. Farmer</u>, 537 N.W.2d 770, 773 (Iowa 1995) (finding husband's claim for loss of consortium against his wife's employer was precluded because his wife's claim was barred by the exclusive remedy provided by the Workers' Compensation Act). One court further found that

> [l]oss of consortium derives from the underlying cause of action in the physically-injured spouse.  The damages sought in a loss-of-consortium action are consequential or special damages . . . .  Loss-of-consortium damages are contingent upon the injured person's entitlement to general damages . . . .  *Where the defendant is not liable to the injured person*

21

> *for physical injuries there can be no derivative claim for consequential damages by the injured person's spouse.*

Archer, 930 P.2d at 1160-61 (internal citations omitted and emphasis added).

State Farm argues that these cases stand for the proposition that a loss of consortium claim is precluded where the injured spouse's claim is barred due to an exclusive remedy or where defendant has no liability to the injured person for the sustained injuries.  On this basis, State Farm contends Darren Cornwell's loss of consortium claim is barred because his wife is not entitled to damages covered by the underinsured motorist provisions of her policy based on the Fireman's Rule.

The Cornwells respond by reiterating their position that the Fireman's Rule does not prevent recovery of benefits in this case.  Specifically, the Cornwells claim they are not barred form seeking recovery for intentional conduct perpetrated by a criminal suspect, which they assert is the circumstance in this case.

Resolution of this argument is based on the Court's determination of the applicability of the Fireman's Rule and the policy's offset provisions.  As the Court previously determined the Fireman's Rule does not preclude liability in the present case, dismissal of Darren Cornwell's loss of consortium claim is not warranted for the same reasons.

**F.     Bad Faith**

State Farm denied underinsured motorist coverage to Cornwell based upon the Fireman's Rule and State Farm's entitlement to a full offset of the benefits she has received (and will receive) from the Des Moines Municipal Fire and Police Retirement

System and the amount she collected form the Progressive Insurance Company which exceeded any entitlement she might have had as against the fleeing suspect if liability did exist.  State Farm denied benefits to Darren Cornwell on the same grounds. Plaintiffs claim Defendant acted in bad faith, or otherwise breached its duty to act in good faith, when it failed to extend underinsured motorist coverage as requested.

An insurer cannot be held liable for bad faith where there exists an objectively reasonable basis for the denial of a claim.  Morgan v. American Family Mut. Ins. Co., 534 N.W.2d 92, 96 (Iowa 1995), overruled on other grounds, Hamm v. Allied Mut. Ins. Co., 612 N.W.2d 775 (Iowa 2000) (overruling Morgan on the statute of limitations issue).  Stated another way, where an insurance claim is "fairly debatable," a claim for bad faith must fail.  Stahl v. Preston Mut. Ins. Ass'n, 517 N.W.2d 201, 203 (Iowa 1994) (citing Reuter v. State Farm Mut. Auto. Ins. Co., 469 N.W.2d 250, 253 (Iowa 1991)).  When a claim is "fairly debatable," whether in a matter of fact or a matter of law, an insurer is entitled to debate the claim.  Dirks v. Farm Bureau Mut. Ins. Co., 465 N.W.2d 857, 861 (Iowa 1991).

State Farm asserts that the present claim is fairly debatable as an objectively reasonable basis exists to reject the claim.  Under the policy at issue, the claimant must be "legally entitled to collect damages from the . . . driver of the" underinsured motor vehicle.  In this case, State Farm reasserts its argument that Cornwell is barred from recovering for her injury from the underinsured motorist by the Fireman's Rule as devised under Iowa law.  At the very least, State Farm contends there is no law establishing the inapplicability of Iowa's Fireman's Rule to the present circumstances,

thereby rendering the claim fairly debatable.  Consequently, State Farm contends the Cornwells' bad faith claim must fail.

In addition, State Farm again points out the payments received by the Cornwells by the Des Moines Municipal Fire and Police Retirement System and Progressive Insurance Company.  Indeed, the Municipal Fire and Police Retirement System has placed Cornwell on full disability pay, which she will continue to draw for the rest of her life.  Moreover, Cornwell is currently employed full time.  State Farm urges the Court to find at the very least that Plaintiffs' entitlement to damages beyond and above those which have already been received consistent with the policy's offset provisions is fairly debatable, and therefore a claim for bad faith must fail.

Plaintiffs argue that this claim is not "fairly debatable" because the Fireman's Rule is "clearly not applicable in this case" as they previously argued.  In addition, Plaintiffs point out that the same issue was unsuccessfully argued by State Farm in a Maryland case with a nearly identical rule.  See generally Hill, 775 A.2d 476.  As a result, Plaintiffs urge the Court to find State Farm's motion for summary judgment should be denied on this issue.

While State Farm may have had occasion to visit this issue in a prior state court action from another jurisdiction, and even though that was unsuccessful, the Court finds the issues in the present case to be one of first review under Iowa law.  As discussed above, both sides present plausible arguments on the applicability of Iowa's Fireman's Rule to the circumstances of the present case.

The Court finds the claim at issue is fairly debatable on both asserted grounds for denial, and Plaintiffs' bad faith claim must be dismissed as a matter of law.  Under the record before the Court, the off-set provisions of the policy clearly made this claim fairly debatable, even if a trier of fact were to later reach a different conclusion. With regard to the applicability of the Fireman's Rule, while this Court reaches a different interpretation, State Farm did have a fairly debatable basis for denial of the claim under the current state of the law pertaining to the Fireman's Rule in Iowa.

## CONCLUSION

For the reasons discussed above, the Court **denies in part** and **grants in part** Defendant's Motion for Summary Judgment (Clerk's No. 9).  The Court denies Defendant's claims that either the Fireman's Rule or the offset provisions of the parties' insurance policy warrants dismissal of Plaintiffs' claim for underinsured motorist benefits under the policy, as there remain genuine issues of material fact as to whether the actions of the suspect driver were intentional and whether the Cornwells have been fairly and fully compensated.  The Court does, however, grant Defendant's motion on the bad faith claim as State Farm had "fairly debatable" reasons to deny the claim.

**IT IS SO ORDERED.**

Dated this 2nd day of June, 2005.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT